IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


REBECCA KATE GREEN,                )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )    Civil Action No. 13-1636
                                   )
CAROLYN W. COLVIN, ACTING          )
COMMISSIONER OF SOCIAL SECURITY,   )
                                   )
            Defendant.             )



O R D E R


      AND NOW, this 23rd day of February, 2015, upon consideration

of Defendant's Motion for Summary Judgment (Doc. No. 15) filed

in the above-captioned matter on March 26, 2014,

      IT IS HEREBY ORDERED that said Motion is DENIED.

      AND, further, upon consideration of Plaintiff's Motion for

Judgment on the Pleadings (Doc. No. 9) filed in the above-

captioned matter on February 24, 2014,

      IT IS HEREBY ORDERED that said Motion is GRANTED IN PART

and DENIED IN PART.  Specifically, Plaintiff's Motion is granted

to the extent that it seeks a remand to the Commissioner of

Social Security ("Commissioner") for further evaluation as set

forth below, and denied in all other respects.  Accordingly,

this matter is hereby remanded to the Commissioner for further

evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

## I.  **Background**

On March 11, 2011, Plaintiff Rebecca Kate Green filed a claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Specifically, Plaintiff claimed that she became disabled on January 31, 2011, due to fibromyalgia, arthritis, depression, obesity, status post tumor excision secondary to spindle cell sarcoma, status post elbow fracture, a learning disability, low back strain and drug abuse.  (R. 14).

After being denied benefits initially on July 15, 2011, Plaintiff completed neuropsychological evaluations, on March 19 and March 26, 2012, with P. Christopher Coburn, Ph.D., who diagnosed Plaintiff with mild mental retardation.  (R. 60-69, 433-36).  Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on August 15, 2012.  (R. 78-79, 24-59).  In a decision dated August 23, 2012, the ALJ denied Plaintiff's request for benefits.  (R. 9-23).  The Appeals Council declined to review the ALJ's decision on September 26, 2013, (R. 1-6), and Plaintiff filed a timely appeal with this Court.  Plaintiff has filed a motion for judgment on the pleadings, and Defendant has filed a motion for summary judgment.

## II.  **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  See 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d

3

110, 114 (3d Cir. 1983)).  "Nor is evidence substantial if it is

overwhelmed by other evidence – particularly certain types of

evidence (e.g., that offered by treating physicians) – or if it

really constitutes not evidence but mere conclusion."  Id.

A disability is established when the claimant can

demonstrate some medically determinable basis for an impairment

that prevents him or her from engaging in any substantial

gainful activity for a statutory twelve-month period.  See

Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A

claimant is considered unable to engage in any substantial

gainful activity 'only if his physical or mental impairment or

impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education,

and work experience, engage in any other kind of substantial

gainful work which exists in the national economy . . . .'"  Id.

at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated

regulations incorporating a five-step sequential evaluation

process for determining whether a claimant is under a disability

as defined by the Act.  See 20 C.F.R. § 404.1520.  In Step One,

the Commissioner must determine whether the claimant is

currently engaging in substantial gainful activity.  See 20

C.F.R. § 404.1520(b).  If so, the disability claim will be

denied.  See Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  If

not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(e), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable

of performing other available work in the national economy in
order to deny a claim of disability.  See 20 C.F.R.
§ 404.1520(g).  In making this determination, the ALJ should
consider the claimant's RFC, age, education, and past work
experience.  See id.  The ALJ must further analyze the
cumulative effect of all the claimant's impairments in
determining whether he or she is capable of performing work and
is not disabled.  See 20 C.F.R. § 404.1523.

III.  **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff met the
insured requirements of the Social Security Act through December
31, 2015.  (R. 14).  Accordingly, to be eligible for Disability
Insurance Benefits, Plaintiff had to establish that she was
disabled on or before that date.  See 42 U.S.C. §§ 423(a)(1)(A),
(c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation
process when reviewing Plaintiff's claim for benefits.  In
particular, the ALJ found that Plaintiff had not been engaged in
substantial gainful activity since the alleged onset of
disability.  (R. 14).  The ALJ also found that Plaintiff met the
second requirement of the process insofar as she had several
severe impairments, specifically, fibromyalgia, arthritis,
depression, obesity, status post tumor excision secondary to
spindle cell sarcoma, status post elbow fracture, a learning

6

disability, low back strain and drug abuse. (R. 14). The ALJ did not, at this point in his analysis, comment on Plaintiff's alleged mental retardation. The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 14-15).

The ALJ next found that Plaintiff retained the RFC to perform simple, routine, repetitive sedentary work that affords a sit/stand option and does not require exposure to temperature extremes, unprotected heights, dangerous machinery, interaction with the public or more than incidental stooping, kneeling, crawling, crouching, balancing or climbing. (R. 15-17). At Step Four, the ALJ found, based on this RFC, that Plaintiff had established that she is incapable of returning to her past employment, so he moved on to Step Five. (R. 17). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as small parts assembler, document preparer and ticket checker. (R. 17-18, 56). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 18).

## IV.   Legal Analysis

Plaintiff argues, in essence, that the ALJ erred in finding that she was not disabled because he failed to analyze her alleged mental retardation under Listing 12.05C, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis.  She further contends that the record establishes that her condition does, in fact, meet that listing, rendering her disabled under the Act.  While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case.  Specifically, the Court finds that the ALJ failed to provide a sufficient analysis of whether Plaintiff's impairments meet or equal the criteria of a listing that would render her disabled under the Act, in particular, Listing 12.05C, but it leaves for the ALJ to determine whether Plaintiff's condition meets that listing.  Accordingly, the Court finds that substantial evidence does not support the ALJ's decision, and it will remand the case for further consideration.

Listing 12.05, for "Intellectual disability," provides: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  The required level of severity can be met when the requirements of Listing 12.05C are satisfied,

8

i.e., "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

In support of her claim, Plaintiff included an assessment by Dr. P. Christopher Coburn, a licensed psychologist, who conducted a neuropsychological evaluation of Plaintiff. After meeting with her on two occasions and conducting various tests,[1] including the Wechsler Abbreviated Intelligence Scale (on which she scored, at 66, in the extremely low range), Dr. Coburn diagnosed Plaintiff with mild mental retardation. Plaintiff also testified at her hearing before the ALJ that she was enrolled in special education classes throughout her school history, and that she had needed to take tests such as her written driver's test and her nurse's aide test repeatedly in order to pass them. (R. 46). Additionally, Plaintiff's attorney specifically argued, before the ALJ at the administrative hearing, that Plaintiff's disabilities meet the criteria of Listing 12.05C. (R. 27).

---

[1]    Dr. Coburn stated that his evaluation included the following tests: the Wechsler Abbreviated Intelligence Scale, the Wide Range Achievement Test-4, the California Verbal Learning Test-II, the Minnesota Multiphasic Personality Inventory-2-RF, the Delis-Kaplan Executive Function System Trail Making Test, the Color-Word Interference Test and 20 Questions Test, the Rey-Osterrieth Complex Figure Test, portions of the Wechsler Memory Scale-III, the Controlled Oral Word Association and Animal Naming Tests of Verbal Fluency, the Boston Naming Test (Short Form), the Barkley Adult ADHD Rating Scale-IV (Self-Report, Current Symptom), the Barkley Deficits in Executive Function Scale-Long Form: Self-Report, the Symbol-Digit Modalities Test, and the Burns Depression Checklist and Anxiety Inventory. (R. 434)

As previously noted, the ALJ found in his decision that Plaintiff has several severe impairments, but he did not include mental retardation among them. The ALJ thus proceeded to evaluate Plaintiff's physical impairments, and he considered whether the severity of Plaintiff's mental impairments met or medically equaled only the criteria of Listing 12.04, "Affective Disorders," and not the requirements of Listing 12.05, "Intellectual disability." (R. 14-15). The ALJ ultimately found that the requirements of that listing were not met or medically equaled, and he advanced to the fourth step in the evaluation process.

Next, in determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's alleged impairments and the records of her medical treatment. At that point in his discussion, the ALJ mentioned for the first time—and then quickly dismissed—Dr. Coburn's neuropsychological examination of Plaintiff and his diagnosis of Plaintiff's mental retardation, by flatly stating that "[t]he assessment of Dr. Coburn is rejected as the Abbreviated Intelligence Test in [sic] not an acceptable measure of intelligence." (R. 17). The ALJ provided no further explanation with regard to his rejection of Dr. Coburn's assessment, other than stating that Plaintiff "is capable of functioning quite well and doing semi-skilled work." (R. 17). The ALJ did not provide any additional explanation

10

for, nor does he cite any authority for, his decision to reject

the results from the Wechsler Abbreviated Test of Intelligence.[2]

Moreover, not only did the ALJ fail to sufficiently address

Dr. Coburn's diagnosis of Plaintiff's mental retardation, but he

also failed to provide any discussion whatsoever regarding

whether Plaintiff meets the criteria of Listing 12.05C,

"Intellectual disability," nor did he even mention that listing

anywhere in his decision.  His general analysis of the criteria

of listing 12.04 is insufficient to address whether the medical

findings could have met listing 12.05C, and since the ALJ simply

did not address the elements of Listing 12.05C, his failure to

include this listing in his decision clearly renders his

analysis incomplete.  While the record may ultimately provide a

solid basis for finding that Plaintiff's alleged mental

retardation does not meet the listing in question, there is

enough evidence from the record to necessitate a more focused

analysis as to the application of Listing 12.05C.

To the extent, though, that Plaintiff asks this Court to

find, at this point, that she plainly meets Listing 12.05C, and

that the ALJ's decision should be reversed and remanded only for

---

[2]     This test appears to have been considered, without issue, in other
cases in evaluating claimants' intellectual abilities.  See, e.g., Cirotti v.
Astrue, No. 10-5468, 2011 WL 3425567 (D.N.J. Aug. 4, 2011) (involving an
appeal from a final decision of the Commissioner denying a request for Social
Security benefits); Bowser v. Astrue, No. 10-645, 2010 WL 4929087 (W.D. Pa.
Nov. 30, 2010) (concerning an appeal of the Commissioner's denial of Social
Security benefits).

the calculation of benefits, the Court cannot find that
substantial evidence in the record as a whole indicates that
Plaintiff has met the listing, or that she is disabled and
entitled to benefits.  See Podedworny v. Harris, 745 F.2d 210,
221-22 (3d Cir. 1984).  In arguing that she meets the
requirements of Listing 12.05C, Plaintiff points to, among other
things, the report of Dr. Coburn as well as the medical evidence
of her other impairments.  Defendant, on the other hand, asserts
that the record does not reveal that all of the requirements of
the listing are met, as is necessary to reach the conclusion
that Plaintiff is disabled.

Since the record is, at best, ambiguous as to whether
Plaintiff can establish that she has met Listing 12.05C, the
Court leaves the initial analysis of this particular issue, in
light of the evidence of Plaintiff's alleged mental retardation,
to the ALJ.  See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d
Cir. 2001) (noting that "'[t]he grounds upon which an
administrative order must be judged are those upon which the
record discloses that its action was based'" (quoting SEC v.
Chenery Corp., 318 U.S. 80, 87 (1943))).  Indeed, the Court
expresses no opinion as to whether the ALJ's ultimate
determination regarding Plaintiff's impairments could be

supported by the record.  It is, instead, the need for further

explanation that mandates the remand on this issue.[3]

**V.   <u>Conclusion</u>**

In short, the record simply does not permit the Court to

determine whether substantial evidence exists to support the

ALJ's determination at Step Three that Plaintiff does not meet a

listing, and, accordingly, the Court finds that substantial

evidence does not support the ALJ's decision in this case.  The

Court hereby remands this case to the ALJ for reconsideration

consistent with this Order.

<u>s/Alan N. Bloch</u><br>
United States District Judge

ecf:    Counsel of record

---

[3]    Although the Court takes no position as to Plaintiff's remaining
issues, the ALJ should, of course, ensure that proper weight be accorded to
the opinion and medical evidence presented in the record, and he should
verify that his conclusions are adequately explained, in order to eliminate
the need for any future remand.